```
gai2mscC
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MSC MEDITERRANEAN SHIPPING
COMPANY HOLDINGS S.A.,

                Plaintiff,              New York, N.Y.

           v.                           16 Civ. 8103(LGS)

FORSYTH KOWNACKI, LLC and
MICHAEL KOWNACKI,

                Defendants.

------------------------------x
                                        October 18, 2016
                                        3:20 p.m.
Before:

                    HON. JOHN G. KOELTL,

                                        District Judge


                        APPEARANCES
                      (via telephone)


GIBSON, DUNN & CRUTCHER, LLP
     Attorneys for Plaintiff
BY:  JAMES L. HALLOWELL
```

1              (Case called)
2              THE DEPUTY CLERK:  All parties please state who they
3    are for the record.
4              MR. HALLOWELL:  James Hallowell, Gibson, Dunn &
5    Crutcher, for plaintiff MSC Mediterranean Shipping Company.
6              THE COURT:  Is Mr. Kownacki on the phone?
7              MR. HALLOWELL:  I don't believe so, your Honor.
8              THE DEPUTY CLERK:  I left a message, and he has not
9    responded.
10             THE COURT:  All right.
11             Mr. Hallowell, did you give notice to Mr. Kownacki?
12             MR. HALLOWELL:  We did, your Honor.  My colleague Rick
13   Dudley and I sent Mr. Kownacki two telephone calls last
14   evening, four e-mails yesterday, and a telephone call again
15   today.
16             THE COURT:  Did you send the papers to Mr. Kownacki?
17             MR. HALLOWELL:  As attached to the e-mails, and we
18   will serve the papers hard copy today.
19             THE COURT:  But the papers were included with the
20   e-mails so that they were conveyed to Mr. Kownacki?
21             MR. HALLOWELL:  Correct, your Honor, and we did not
22   receive any bounce-back e-mails, so we believe that they went
23   through.
24             THE COURT:  My deputy has left word for Mr. Kownacki
25   that we would hear him this afternoon at 3:00.  Did you also

1   let Mr. Kownacki know about that?
2            MR. HALLOWELL:  We did, by both telephone and e-mails.
3   We had asked Mr. Kownacki to contact me, and then I would
4   connect in the court at 3:00 today, as you instructed.  We have
5   not heard from him.
6            THE COURT:  Okay.
7            Well, I have reviewed the papers.  Anything you would
8   like to tell me?
9            MR. HALLOWELL:  If your Honor is okay on the papers,
10  that's fine with me.  But I can also give you a summary of
11  the relief that we are requesting and the basis for the
12  request.
13           THE COURT:  Okay.
14           MR. HALLOWELL:  We are here today, your Honor, seeking
15  a temporary restraining order to restrain defendants, Forsyth
16  Kownacki and Michael Kownacki, from violating two separate
17  confidentiality agreements that they have with plaintiff MSC, a
18  nondisclosure agreement and the confidentiality provisions in a
19  financing agreement between the parties.
20           Defendants have made explicit threats to disclose
21  confidential information that they received from MSC pursuant
22  to these requests.  They threatened to do so to the press and
23  in public court filings.  There is no dispute that the
24  information that they have received is in fact confidential and
25  that its disclosure would violate the parties and irreparably

1    harm MSC.
2             MSC is an international shipping company that has
3    maintained the confidentiality of its financial statements and
4    other financial documents and those are the documents and
5    information that have been provided to defendants and that are
6    the basis for the concern in our application today.
7             Forsyth Kownacki is a consulting firm that assists in
8    financing arrangements and Michael Kownacki is a partner at
9    that firm.  The relevant agreements are within the papers that
10   you have, your Honor.  The NDA is Exhibit 1 to the sealed Vogel
11   declaration.
12            We would note for your Honor that defendants have
13   consented to the existence of irreparable injury in the event
14   of disclosure of this information.  They have done so, for
15   instance, in paragraph 6.2 of the NDA.  But, in any event,
16   irreparable injury would exist because, once this information
17   is disclosed, it cannot be put back in the bottle, so to
18   speak.
19            MSC is likely to succeed on the claims that it has
20   asserted in its complaint, including claims for breach of
21   contract and anticipatory breach of contract, and also a claim
22   under the amended Federal Trade Secret Act; and the balance of
23   the equities favors MSC in this instance because MSC is seeking
24   an injunction to maintain the status quo until such time as a
25   preliminary -- a hearing on a motion for preliminary injunction

1    can be held.

2             THE COURT:  Okay.  Do you have any reason to believe
3    that anything has happened from yesterday until today in terms
4    of the disclosure of any of the confidential information?

5             MR. HALLOWELL:  We have no reason to believe one way
6    or the other, your Honor, because we have not had any contact
7    from FCC or from Mr. Kownacki.  But that's the basis of our
8    concern, your Honor.

9             You have seen the exhibits in the attached Vogel
10   declaration, where the defendants have indicated an intention
11   to file our confidential information publicly.  You have also
12   seen that co-counsel for MSC, Sheppard Mullin, in Exhibits 21,
13   22, and I believe 24, have reached out repeatedly to
14   Mr. Kownacki.  There has been no response from him.  And now
15   there is no response from him, to our outrage, so we don't know
16   what he could do.

17            THE COURT:  All right.  The reason for my question was
18   somewhat academic.  You came in yesterday with an *ex parte*
19   order to show cause looking for a temporary restraining order
20   without notice, which I declined to give, because I didn't see
21   why notice should not be given and the other side given an
22   opportunity to appear and explain why the temporary restraining
23   order should not be granted.  Notice has now been given, and so
24   the reasons against an *ex parte* TRO no longer exist; and I was
25   just interested to see whether, in fact, any harm had in fact

1  occurred from the fact that notice was given to the defendants.
2  And the answer is there is no evidence that there was any harm
3  from giving notice to the defendants, which is not to say that
4  you haven't made a sufficient showing for a temporary
5  restraining order after notice.  Notice has now been given and
6  defendants have chosen not to appear, not to resist the
7  temporary restraining order.  It is simply a good object lesson
8  that some of this could have been avoided had notice been given
9  yesterday before coming in, but here we are.
10          You have plainly made a sufficient showing for a
11 temporary restraining order.  There is a showing of immediate
12 and irreparable injury from the disclosure of confidential
13 information which the defendants were obligated not to
14 disclose.
15          You have also made a sufficient showing of a
16 likelihood of success on the merits based on both the
17 anticipatory breach of contract and the actual breach of
18 contract.
19          There were two agreements that provided for
20 maintaining confidential information.  The defendants were
21 under an obligation to return the confidential information on
22 demand.  Demand was made.  They refused to do it.  On top of
23 that, they threatened to disclose plainly the confidential
24 information as a litigation tactic.
25          In addition to being an anticipatory breach of the

gai2mscC

agreements, there is also a showing of the breach of fiduciary duty.  There is also a showing, although it would be unnecessary, that the balance of equities tips decidedly in favor of granting the temporary restraining order.  There is no equity on behalf of the defendants in being able to disclose confidential information that they are required not to disclose, and there is a strong interest that the plaintiff has in assuring that its confidential information is not disclosed.

So the next question is a date for the hearing on the preliminary injunction.

(Pause)

THE COURT:  October 27, at 3:30 p.m.

MR. HALLOWELL:  October 27, at 3:30 p.m., your Honor?

THE COURT:  Yes.

MR. HALLOWELL:  Thank you.

(Pause)

THE COURT:  I am just reading over the papers for the order incorporating the temporary restraining order and setting the preliminary injunction hearing down.  That's why there is a pause in the phone.

(Pause)

THE COURT:  You want the papers delivered to the attention of Anne Champion.

MR. HALLOWELL:  Yes, your Honor.  She is my partner, who is out this week, but will be back.

|   |   |
|---|---|
| 1 | THE COURT: Okay. So responsive papers should be |
| 2 | submitted by October 24 and reply papers by October 26. |
| 3 | There should be only a minimum bond in this case, so |
| 4 | the bond will be $1,000. |
| 5 | MR. HALLOWELL: Your Honor, will the hearing be |
| 6 | conducted by you as the Part I judge? |
| 7 | THE COURT: It will be conducted by me, and I will |
| 8 | still be the Part I judge, but I had taken the TRO and the |
| 9 | preliminary injunction from Judge Schofield as a Part I matter. |
| 10 | Even if it goes over until the following week, I will still |
| 11 | keep it for purposes of the preliminary injunction. The case |
| 12 | is before Judge Schofield, but the TRO and preliminary |
| 13 | injunction are before me as a Part I matter. |
| 14 | Okay. I have signed the order granting the TRO and |
| 15 | setting a hearing on the preliminary injunction, and we can see |
| 16 | that that order is filed on ECF and a copy is faxed to you. If |
| 17 | you want, Mr. Hallowell -- let me just check one other thing. |
| 18 | (Pause) |
| 19 | THE COURT: Service of this order and all of the other |
| 20 | papers thus far should be made by October 19. |
| 21 | MR. HALLOWELL: Okay. |
| 22 | THE COURT: All right. I think that covers |
| 23 | everything. Anything else? |
| 24 | MR. HALLOWELL: Thank you, your Honor. That does |
| 25 | cover everything, and we will proceed accordingly. |

gai2mscC

1           THE COURT:  Okay.  Thank you.

2           MR. HALLOWELL:  Thank you.

3                          - - -