UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

MSC MEDITERRANEAN SHIPPING
COMPANY HOLDING S.A.,

                              Plaintiff,

            -against-

FORSYTH KOWNACKI LLC, et al.,

                              Defendants.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/30/2017__

16 Civ. 8103 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

        This application for attorneys' fees arises out of a default judgment in favor of Plaintiff

MSC Mediterranean Shipping Company Holding S.A.'s ("MSC") claims for an anticipatory

breach of contract and breach of contract, granting Plaintiff injunctive relief, declaratory relief

and attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d) and the terms of

a financing agreement executed between the parties.  Plaintiff seeks $489,537.00 in costs and

fees.  For the following reasons, Plaintiff's motion is granted in part.

I.        BACKGROUND

        MSC and Defendant Forsyth Kownacki LLC ("FK") executed an agreement about a

potential confidential financing transaction (the "Financing Agreement") in 2014.  The terms of

the Financing Agreement and a separate non-disclosure agreement contained confidentiality

clauses, which bound FK and its principals, including Defendant Michael Kownacki.  Default

Judgment was entered against Defendants on February 2, 2017, for breaching the terms of the

non-disclosure agreement by refusing to return or destroy the confidential information in their

possession in response to MSC's request to do so and for anticipatorily breaching the non-

disclosure agreement and Financing Agreement by threatening to disclose MSC's confidential information.

The Financing Agreement also stated: "To the extent any dispute arises between the parties hereto regarding any of the subject matter hereof, the prevailing party in any action or proceeding brought in connection therewith will be entitled to reasonable attorneys' fees and courts costs from the losing party."

Plaintiff filed a motion for attorneys' fees and costs on January 31, 2017, supported by a memorandum of law and attorney declaration requesting $455,778.03 in fees and costs. Plaintiff filed a supplemental declaration seeking an additional $32,727.19 in legal fees and $1,031.78 in costs, bringing the total sought to $489,537.00. Defendants have not appeared in this action.

## II.    DISCUSSION

Attorneys' fees and costs are appropriately awarded pursuant to the terms of the Financing Agreement and Federal Rule of Civil Procedure 54(d). "It is an ancient common axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotation marks omitted). "[A] federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993). "Although a district court has broad discretion in awarding attorneys' fees, . . . where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *Id.*

The clear language of the Financing Agreement awards "reasonable attorneys' fees and court costs" to the "prevailing party in any action or proceeding" connected to the Financing Agreement. Plaintiff brought this action to enforce the confidentiality terms of the Financing

2

Agreement and is the "prevailing party" by virtue of the Default Judgment entered in its favor.

The Financing Agreement's clause granting fees is also enforceable. "Under New York law, a

contract that provides for an award of reasonable attorneys' fees to the prevailing party in an

action to enforce the contract is enforceable if the contractual language is sufficiently clear."

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Here, the

Financing Agreement provided that New York law governs and contains clear language that a

prevailing party is entitled to fees and costs. Accordingly, an award of fees and costs is

warranted.

To determine the amount of attorneys' fees to be awarded, a court begins with the

"lodestar -- the product of a reasonable hourly rate and the reasonable number of hours required

by the case," which results in a "presumptively reasonable fee." *Perez v. AC Roosevelt Food

Corp.*, 744 F.3d 39, 44 (2d Cir. 2013) (citation omitted). "A district court may adjust the

lodestar when it does not adequately take into account a factor that may properly be considered

in determining a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)

(internal quotation marks omitted). "The presumptively reasonable fee boils down to what a

reasonable, paying client would be willing to pay, given that such a party wishes to spend the

minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d

170, 174 (2d Cir. 2009) (internal quotation marks omitted).

In determining what a reasonable client would pay, a court applies the *Johnson* factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
the level of skill required to perform the legal service properly; (4) the preclusion
of employment by the attorney due to acceptance of the case; (5) the attorney's
customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
limitations imposed by the client or the circumstances; (8) the amount involved in
the case and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citation omitted).  The requesting party bears the burden of establishing the appropriateness of the hours expended and hourly rates.  *See SEC v. Cope*, No. 14 Civ. 7575, 2016 WL 7429445, at *2 (S.D.N.Y. Dec. 23, 2016).  "[T]he customary hourly rate and awards in similar cases are strong evidence of what the market will bear."  *Dimopoulou v. First Unum Life Ins. Co.*, No. 13 Civ. 7159, 2017 WL 464430, at *2 (S.D.N.Y. Feb. 3, 2017) (internal quotation marks omitted).  "[H]ours that are excessive, redundant, or otherwise unnecessary" should be excluded.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Plaintiff requests $67,122.00 in attorneys' fees for 86.2 hours of work by attorneys at Sheppard Mullin during the two weeks between September 22 and October 19, 2016.  Plaintiff requests fees it paid Sheppard Mullin "associated with its pre-suit responses to Kownacki's threats," specifically, researching, drafting and sending three letters to Defendants in an attempt to enforce MSC's contractual rights.  The Sheppard Mullin timesheets however show that the firm billed time for drafting a complaint and motion papers in support of a TRO, work that apparently was duplicated and completed by Gibson Dunn.  This amount, which the Court in its discretion estimates to be $37,173 should be deducted.  Also, time billed by two attorneys, partner Charles Donovan and associate Blanka Wolfe, of $3,332.50, should be deducted as it appears that both were briefly brought into the matter but never called upon to draft, revise, research or comment on the firm's work product.

The Sheppard Mullin hourly rates are reasonable, though somewhat higher than those recently awarded within this district for the firm.  *See TufAmerica Inc. v. Diamond*, No. 12 Civ.

3529, 2016 WL 1029553, at *5 (S.D.N.Y. Mar. 9, 2016).  The Court appreciates that billing rates

will likely vary, and reasonably so, based on the seniority, expertise and sometimes practice area

of a particular partner within the same firm.  Accordingly, in its discretion, the Court reduces

Plaintiff's request for Sheppard Mullins fees by $40,506 in fees, for reimbursement of $26,616.[1]

Reasonable costs of $371.38 are supported by the records submitted.

   Plaintiff requests $399,224.10 (€378,863.67)[2] in fees related to work by Gibson Dunn,

but the invoices submitted reflect $398,839.45 billed in fees.  The fees represent 547 attorney

hours and approximately 70 hours worked by other staff, including paralegals and research

librarians, during the period from September 27, 2016 to January 31, 2017.  This work included

the preparation and filing of a motion for a temporary restraining order, memorandum of law,

and supporting documents; motion for default judgment; motion for attorneys' fees as well as

three court appearances and a telephonic hearing.

   The time entries and corresponding fees should be reduced to exclude the time of senior

partner Adam Offenhartz from October 13 to October 20, 2016, amounting to $8,688 because he

transitioned off the matter during that period and was replaced by James Hallowell.  The matter

did not warrant the involvement of two senior partners, and was not staffed in that way except

---

[1] The Court does not suggest that Sheppard Mullin should not be paid for work duplicated by
Gibson Dunn, but only that the total reasonable fee amount does not include duplicative work,
which may have been requested or reasonably expected by the client.

[2] Plaintiff provides fees and costs amounts in United States Dollars, Pounds Sterling and Euros.
Plaintiff is based in Switzerland and invoices reflect that it was billed in all three currencies.
Foreign currencies are, for the purposes of this Opinion and Order, converted using the most
recent foreign exchange rates provided by the U.S. Department of Treasury:  €0.9490 to $1 USD,
and £0.8120 to $1 USD.  *See* U.S. Dep't of Treasury, Bureau of the Fiscal Serv., *Treasury
Reporting Rates of Exchange*,
https://www.fiscal.treasury.gov/fsreports/rpt/treasRptRateExch/currentRates.htm (rates as of
Dec. 31, 2016).

during this brief period.  Also, half the billed time of paralegal Angel Arias, or $13,325 should be deducted because his time entries reflect fewer tasks that contributed directly to the work on this matter than the time would suggest.

Plaintiff charged at rates ranging from $210.75 (€200) to $437.30 (€415) per hour for non-legal staff; $569.02 (€540) to $753.42 (€715) per hour for associates; and $874.60 (€830) to $1,048.47 (€995) per hour for partners at Gibson Dunn.  These rates are reasonable under the circumstances, given the experience and work performed by the particular individuals.  *See U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("[P]artner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation.") (citation omitted); *Inter-Am. Dev. Bank v. Venti S.A.*, No. 15 Civ. 4063, 2016 WL 642381, at *7–8 (S.D.N.Y. Feb. 17, 2016) (approving rates of $600 to $690 per hour for partners with 10 to 13 years of experience; $410 and $565 per hour for senior associates; and $270 per hour for legal assistants).  The one exception is the unexplained anomaly between the more senior Richard Dudley (class of 2012 with a billing rate of €540 or $569, which increased to €595 or $627 for work performed in 2017) and the more junior Hanae Fujinami (class of 2014 with a billing rate of €565 or $595, which increased to €620 or $653 for work performed in 2017).  Accordingly, Ms. Fujinami's rate is reduced to Mr. Dudley's rates for this purpose, resulting in a deduction of $3,080.

This case -- which involved unopposed, relatively straightforward breach of contract and anticipatory breach claims -- was not particularly complex.  On the other hand, there were issues of foreign law, and work was done on an urgent basis to prepare the application for a temporary restraining order, including work on nights and weekends as evidenced by the billing and disbursement records.  Accordingly, in its discretion, the Court reduces Plaintiff's requested fees

for work by Gibson Dunn in the amounts listed above for a total reduction of $25,093 from the amount invoiced, resulting in reimbursement of $373,747.  Plaintiff's request for costs and disbursements of $17,862.62 in relation to work done by Gibson Dunn is reasonable and supported by the invoices.

Plaintiff seeks fees of $4,956.90 (UK£4,025.00) paid to London firm Fountain Court Chambers in connection with the preparation of an expert declaration on foreign law.  The firm's invoice itemizes the tasks performed and corresponding fees, but no hourly rate or number of hours is included.  The declaration was, however, submitted to the Court to provide an opinion on English law regarding the enforceability of the Non-Disclosure Agreement between MSC and FK.  The Court, in its discretion, finds that the fees are reasonable for an expert declaration on issues of foreign law and grants the fees requested for work done by Fountain Court Chambers.

The Court, in its discretion, awards Plaintiff $423,554 in fees and costs, as reflected in the table below.

### Summary of Awards for Fees and Costs

| Law Firm | Attorneys' Fees | Costs |
|---|---|---|
| **Sheppard Mullins** | $  26,616 | $    371.38 |
| **Fountain Court** | $   4,957 | $         0 |
| **Gibson Dunn** | $373,747 | $17,862.62 |
| **TOTAL** | **$405,320** | **$18,234.00** |
| **COMBINED TOTAL** | **$423,554** | |

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion for attorneys' fees and costs is GRANTED

in part.  Plaintiff is entitled to $423,554 in attorneys' fees and costs.

The Clerk of Court is respectfully directed to close the application at Docket Number 43.

Dated: March 30, 2017
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE